Williams v. Robb.

natured improvident man, fond of drink—indeed boozy at the hearing—who was obviously chronically in need of money. He undoubtedly got what money the old woman had in the bank; he wanted the property and it is to my mind certain that he urged and cajoled the old woman into making these transfers, in a way, which, under the circumstances, amounted to undue influence.

I will advise a decree setting aside the conveyances and assignment of mortgage, other than the one made in 1894.

*Mr. John H. Fort* and *Mr. John L. Semple,* for the appellant.

*Mr. John F. Harned,* for the respondent.

---

JOSEPH Q. WILLIAMS, receiver, complainant and appellant,

*v.*

THOMAS ROBB et al., defendants and respondents.

[Filed March 5th, 1900.]

A bill was filed to restrain defendant R. from foreclosing a mortgage held by him on property of complainant's company, alleging that said R. had entered into an agreement which prevented the enforcement of the mortgage debt.—*Held,* that no such contract as pleaded is proved.

---

On appeal from an order advised by Vice-Chancellor Reed, who delivered the following opinion:

On June 5th, 1896, one Warren got two judgments against the company for $506.87 and $1,106.59 respectively. On December 13th, 1897, one Tunis got a judgment against the company for $2,035. It is the sale under the execution issued upon these judgments that the bill seeks to restrain.

In May, 1893, there existed a mortgage of $7,500 upon the property of the company, which mortgage was held by one Hughes. The company had other debts amounting to $6,000. Mr. Logan M. Bullitt became interested in the affairs of the company, and solicited a loan from Thomas Robb, which was effected, said Robb loaning $12,500, which, with the loan of $1,000 made by Mr. Bullitt, was the consideration of the mortgage for $13,500 made to Mr. Robb, he repaying Mr. Bullitt the $1,000 advanced by him. At the same time a mortgage for the same amount upon the personalty of the company was given to Mr. Robb. The money so loaned was to pay off the debts already mentioned. Mr. Thomas Robb sold this mortgage to his brother, William Oscar Robb.

In 1896 the Franklin Electric Light Company, through Mr. Bullitt, entered into a contract through Mr. Wilbur, representing the Fort Wayne Electric Company, by which the latter company was to install an incandescent light plant for the Franklin Electric Light Company, the price of which plant was to be $16,500; $4,000 was to be paid in cash, and the title of the plant was to remain in the Fort Wayne Electric Company until the rest of the consideration was paid.

In June, 1896, as already remarked, the Warren judgments were obtained, and Mr. Warren applied to have a receiver appointed when the judgments were bought by Mr. Robb; and in December, 1897, the Tunis judgment was also purchased by the same party.

In January, 1898, the Fort Wayne Electric Company recovered a judgment against the Franklin Electric Light Company for $12,588.16. It applied twice for the appointment of a receiver, and upon the second application the present complainant was appointed on September 17th, 1898.

In April, 1898, Mr. Robb filed a bill to foreclose his two mortgages, executed in 1893, which foreclosure the bill, as already remarked, seeks to restrain.

It is thus perceived that thus far the Messrs. Robbs' title to the mortgages and the two judgments and their right to respectively enforce them seems to be perfect. But it is charged that Mr. Thomas Robb is the real owner of the mortgage as well as the judgment, and has lost his right to enforce the payment of these debts at this time by reason of an agreement into which he entered with the corporation. This alleged agreement is set out in the bill as follows:

That the stock of the company was to be deposited with Mr. Bullitt, a lot was to be secured in the city of Cape May, and a building erected thereon; that the arc light machinery was to be removed from West Cape May into the said building and a new incandescent plant was to be purchased and installed therein; that the then outstanding indebtedness of the company was to be paid, and the money to effect this purpose was to be supplied by Robb; that the company was to create a mortgage of $50,000 upon its plant and issue $50,000 of stock; that certain number of bonds was to be given to Robb and $30,000 par value of stock; that $5,000 par value of stock was to go to each of three persons, namely, Mr. Melvin, Mr. Taylor and Mr. Hildreth, whose stock had been deposited with Mr. Bullitt; that $5,000 was to be paid to Mr. Hildreth for his purchase of the $5,000 of stock from one Needles, who had held that amount of the original stock, and that Mr. Bullitt was to be repaid what he had paid Mr. Miller for his stock out of his own money.

It is charged that in pursuance of this agreement the original stock was put in the hands of Logan M. Bullitt in May, 1896, Mr. Bullitt giving a receipt to Mr. James M. E. Hildreth on May 18th, 1896, for the stock containing an agreement to redeliver the same amount of stock in the reorganized company.

It is charged that a lot was bought and a building erected for the company, and that the title to such lot was made to William Oscar Robb; that a contract for the installation of an incandescent plant was entered into with the Fort Wayne Electric Company for $16,500; that Mr. Robb purchased the two judgments of Mr. Warren and the judgment of Mr. Tunis already mentioned.

This is the agreement, and the alleged acts in part performance of the agreement, executed by Mr. Robb.

The bill charges that by force of this agreement Mr. Robb was bound to pay the judgments which he is now pressing against the company and to cancel the mortgage which he is now foreclosing, and to pay the entire cost of the incandescent plant; and that upon the performance of these conditions he is entitled to a certain number of bonds and to $30,000 of stock.

The main witness for the complainant is Mr. James E. Taylor, who was an original holder of ten shares of the stock out of the sixty-one shares of stock issued, and the general manager of the company. He says that at the time when Mr. Robb paid off the debts of the company in 1893, and took the two mortgages the installation of the incandescent plant was mentioned. Messrs. Bullitt and Robb both say that it was not mentioned. I am confident that if it was mentioned at all the want of an incandescent plant was alluded to as a defect in the existing plant, which made Mr. Robb hesitate to make the loan.

It is apparent that Mr. Robb was induced to make this loan by Mr. Bullitt. "It was two years after the loan of this money," says Mr. Taylor, "when he (Mr. Robb) agreed in our conversations with him that if he would get all the stock and put it into an incandescent plant and give him or let him have thirty thousand dollars, or thirty-five thousand dollars of an issue of stock, he would furnish the necessary money, whatever it was to be, and we were to transfer all our stock to Mr. Bullitt—he to represent Mr. Robb—and he and Bullitt were to put up the money for the $11,000 judgment; the company was to get a new contract with the city of Cape May for five years; the Fort Wayne Electric Company were to install the plant."

The evidence has entirely failed to convince me that the company was ever in a position to compel Mr. Robb to install an incandescent plant, to cancel his mortgages, to pay off the debts of the company, and to take new bonds and stock for the amount of his claims against the company. That there was a great deal of talk about the installation of an incandescent plant between Mr. Robb, Mr. Bullitt and Mr. Taylor there is no doubt. Neither have I any doubt that Mr. Robb came to the conclusion to make an additional loan to the company upon certain conditions; but these conditions were never fully brought about. Mr. Bullitt was

not his agent. Mr. Bullitt was an officer and agent of the company from 1893, when he induced Mr. Robb to make additional advances to pay off the debts which had accrued since 1893, and such advances as were necessary to enable the company to put in an incandescent plant.

Mr. Bullitt was the only one connected with the company who had any influence with Mr. Robb; and because of this Mr. Robb made it a condition that before he would consider the proposition of making further advances, the then outstanding stock of the company should be under the control of Mr. Bullitt. On the supposition that all the conditions would come into existence, Mr. Robb undoubtedly bought the lot, and a building was erected upon it in 1896. The hitch in the negotiations came when the contract for the installation of the plant was presented to Mr. Robb. Mr. Robb had never agreed to construct the installation plant. He was, in the language of Mr. Hildreth, to furnish a certain amount of money that he was then to advance, including the money which he had in the company, and was to receive a first mortgage upon the plant. Mr. Bullitt brought Mr. Wilbur into relations with Mr. Robb. Up to that time it is perfectly obvious that Mr. Robb had agreed to advance only $8,000. No one testifies, excepting Mr. Taylor, that he promised to pay the full price of the incandescent plant.

On July 24th, 1896, Mr. Bullitt wrote to Mr. Taylor about raising $5,000 in Cape May City for the purpose of putting in the plant, and spoke of an issue of bonds. The whole tone of the letter is inconsistent with the notion that Mr. Robb was then under a contract to do anything, and to its contents there seems to have been no dissent by Mr. Taylor.

Mr. Bullitt was negotiating for the construction of the plant and trying to get Mr. Robb to enter into an agreement directly with the Fort Wayne Electric Company to pay for it. Mr. Robb refused to sign the contract because of the clause that the title to the complainant should remain in the Fort Wayne Electric Company until the full consideration was paid. This clause would have prevented the execution of a mortgage upon the property of the Franklin Electric Light Company, which would have been the first lien upon its property. After Mr. Robb's

refusal to accede to these conditions, Mr. Bullitt himself caused the contract with the Fort Wayne Electric Company, already mentioned, to be executed. That Mr. Bullitt did not understand that Mr. Robb had already bound himself to pay for this plant is obvious; and it is equally apparent that no one connected with the company at that time so understood the position of Mr. Robb towards the company.

Until this bill was filed by the receiver, there never was a movement by the officers or stockholders of the Franklin Electric Light Company to enforce such an agreement. After the contract for the construction of the incandescent plant was executed the plant was erected, the Franklin Electric Light Company went on with its business, judgments were obtained against it, an action was brought by the Fort Wayne Electric Company against the Franklin Electric Light Company, which went to judgment, and an application was made for a receiver, and yet no one stirred against Mr. Robb, asserting that he was bound to pay all these debts on the conditions mentioned. Mr. Taylor then had the same knowledge of all the facts in the case that he now possesses. My conclusion is that no such contract as pleaded is proved, and the bill must be dismissed.

This makes it unnecessary to consider the interesting questions raised as to the kind and manner of relief which could be accorded to the receiver in case such a contract had been proved.

*Mr. Lindley M. Garrison,* for the appellant.

*Mr. Robert H. McCarter* and *Mr. Samuel H. Grey,* for the respondents.

PER CURIAM.

The order appealed from is affirmed, for the reasons contained in the opinion of Vice-Chancellor Reed who advised it.

*For affirmance*—THE CHIEF-JUSTICE, DEPUE, VAN SYCKEL, DIXON, GARRISON, GUMMERE, LIPPINCOTT, LUDLOW, BOGERT, HENDRICKSON, ADAMS, NIXON, VREDENBURGH—13.

*For reversal*—None.